IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 7:23-cr-00045 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DEMONTE JAMEER BELCHER and | ) | By:   Hon. Thomas T. Cullen |
| RAMEL LATEEF ABRAMS, | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendant Ramel Lateef Abrams's motions for Rule 17(c) pretrial subpoenas *duces tecum* for records related to his potential alibi, and to seal and file *ex parte* the same. (Def.'s Mot. File *Ex Parte* 17(c) Mot. at 1 [ECF No. 34].) These motions were fully briefed and argued and are ripe for decision. For the reasons discussed below, the court will grant both of Abrams's motions. The court will also permit only Abrams and his counsel to inspect the resulting subpoena records when they are produced unless and until he chooses to use them at trial, consistent with his required disclosures under the Federal Rules of Criminal Procedure.

## I.    BACKGROUND

Abrams and his co-defendant, Demonte Jameer Belcher, were indicted and charged with bank robbery and conspiracy to commit bank robbery, in violation of 18 U.S.C. §§ 2, 371, and 2113(a). (Indictment [ECF No. 20].) The indictment alleges that Belcher and Abrams conspired to rob a Roanoke bank, and on June 22, 2023, put their plan into action. (*Id.* at 2.) The two men purportedly entered the bank and gave the teller a note that said, "Let's make everything right. You have least [sic] than 30 seconds to give me $50k or die got nothing to

lose[,]" and were promptly given $8,659. (*Id.* at 2; Aff. Supp. Compl. at 2 [ECF No. 1-1].) The men ran away from the bank but left the note, from which authorities later recovered latent fingerprints identified as belonging to Belcher, Abrams, and a third unidentified person from the note. (Aff. Supp. Compl. at 3.) Based on the purported fingerprint match, law enforcement searched Abrams's apartment later that night and recovered $1,916 in cash and other items consistent with those used during the robbery. (*Id.* at 3–4.) The next morning, police searched Belcher's home and found $2,215 in cash and a bag "which appeared identical to the bag used by one of the" bank robbers. (*Id.* at 4.)

When the U.S. Attorney's Office presented its case to the grand jury, Abrams's girlfriend, Brianna Hawk, testified that Abrams had brought lunch to her at her workplace on the day, and near the time, of the robbery. Despite this testimony establishing a possible alibi, the grand jury indicted both Belcher and Abrams.

Abrams now moves the court to issue subpoenas *duces tecum* under Federal Rule of Criminal Procedure 17(c) and to file his motion for those subpoenas under seal and *ex parte*. (Def.'s Mot. at 1.) As detailed in his motion to file that request *ex parte* and at the hearing, Abrams generally seeks records "that may help bolster a possible alibi or may provide an entirely different alibi." (*See id.*)

## II.   ANALYSIS

Federal Rule of Criminal Procedure 17(c) allows for the issuance of pretrial subpoenas *duces tecum*. The rule provides:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.

- 2 -

> When the items arrive, the court may permit the parties and their
> attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1). The court has ample discretion in the issuance of Rule 17(c) subpoenas. *See United States v. Caro*, 597 F.3d 608, 616 (4th Cir. 2010).

In ruling on Abrams's motions, the court must decide three questions: (1) whether Abrams's Rule 17(c) motion be filed *ex parte* under Rule 17(c); (2) whether the subpoena requests pass muster under *United States v. Nixon*, 418 U.S. 683 (1974); and (3) if the court answers yes to the first two questions, whether it should permit only Abrams to view the subpoenaed records unless and until he decides to use them at trial or is otherwise compelled to disclose them by the Federal Rules of Criminal Procedure? Though cognizant that it should only permit such *ex parte* filings on rare occasions, the court finds on this record that Abrams's requests fits within the narrow exception to the presumption against both *ex parte* filings and one-sided disclosure, and it must grant Abrams's motions in full.

## A.   *Ex Parte* Rule 17(c) Motions

Abrams asks the court to permit him to file his Rule 17(c) request under seal and *ex parte* because, he contends, it divulges trial strategy and other confidential information that may prejudice him. The government opposes such a filing, stating that Abrams's motion does not present a limited circumstance in which an *ex parte* Rule 17(c) motion is proper.

Notwithstanding the fact that *ex parte* proceedings are disfavored, it is generally accepted that the court may, under Rule 17(c), permit *ex parte* applications for subpoenas in limited circumstances. *See United States v. Kravetz*, 706 F.3d 47, 53 n.4 (1st Cir. 2013) (acknowledging that "the text of Rule 17(c) does not expressly prohibit *ex parte* requests for subpoenas, and courts have found them to be permissible"); *United States v. Sleugh*, 896 F.3d

- 3 -

1007, 1010 (9th Cir. 2018) (noting that 17(c) applications "are often filed *ex parte* and under seal") 2 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 275 (4th ed. 2023) ("It has been held, however, that in limited circumstances, both the government and a defendant may make an *ex parte* application for a pre-trial subpoena *duces tecum*."). The Fourth Circuit does not appear to have weighed in on whether Rule 17(c) applications may be filed *ex parte*, but Judge Robert Payne's opinion in *United States v. Beckford*, 964 F. Supp. 1010 (E.D. Va. 1997), is widely cited for the proposition that such *ex parte* applications are, under limited circumstances, appropriate. *See, e.g.*, *United States v. Tomison*, 969 F. Supp. 587, 590 (E.D. Cal. 1997); *United States v. Clay*, No. 2:21-cr-00062-01, 2023 WL 3046077, at *2 (S.D.W. Va. Apr. 21, 2023). The *Beckford* court's conclusion rests on the Sixth Amendment right to compulsory process. For a movant to succeed in persuading the court to issue a Rule 17(c) subpoena, he must show how the requested records are relevant to his case, admissible, and specific under *United States v. Nixon*, 418 U.S. 683 (1974). In so doing, he may necessarily need to disclose his "trial strategy, witness identities or attorney work-product." *Beckford*, 964 F. Supp. at 1027. Failure to permit *ex parte* 17(c) applications in appropriate circumstances, therefore, would violate a defendant's Sixth Amendment rights by forcing the defendant to make "the constitutionally-prohibited 'Hobson's choice'"—whether he should "make no defense or disclose his whole case to the Government before his trial." *Id.* at 1015, 1027 (quoting *Smith v. United States*, 312 F.2d 867, 872 (D.C. Cir. 1962)).

The court finds that Judge Payne's analysis in *Beckford* is persuasive and adopts it for this case. After a thorough review of Rule 17's text and constitutional considerations, the *Beckford* court concluded that "Rule 17(c) authorizes *ex parte* procedure with respect to the

issuance of pre-trial subpoenas only in exceptional circumstances."[1] *Beckford*, 964 F. Supp. at 1030. "In those rare situations where mere disclosure of the application for a pre-trial subpoena would: (i) divulge trial strategy, witness lists or attorney work-product; (ii) imperil the source or integrity of subpoenaed evidence; or (iii) undermine a fundamental privacy or constitutional interest of the defendant, the *ex parte* process could be available on a proper showing." *Id.* Expounding on what is necessary to make this showing, the court held that a 17(c) motion may be filed *ex parte* "where documents could be expected to be of use to the defense and, as to which, a satisfactory *Nixon* showing could result in the disclosure of the trial tactics, the actual defense to be advanced at trial, or other undue disclosure to the Government." *Id.*

To prove his case is one of those exceptional circumstances that warrants *ex parte* filing, Abrams carries "a heavy burden." *Id.* His motion must be filed *ex parte*, he claims, because it reveals trial strategy insofar as it discloses, generally, counsel's theories on potential alibis and, more fundamentally, whether to bring a specific alibi. (Def.'s Mot. at 2–3.) In opposition, the government asserts that every subpoena request by nature divulges some trial strategy, so a general citation to "trial strategy" as an exceptional circumstance would permit the exception to swallow the rule. Moreover, since Abrams disclosed that his subpoena requests generally relate to a potential alibi and that all information leading to Abrams's request was available through shared discovery, there is no risk of impinging on confidential information or privacy

---

[1] Though *Beckford* opened the door to *ex parte* 17(c) applications, not all courts impose the additional "exceptional circumstances" requirement. *See, e.g.*, *United States v. Vigil*, No. CR-10-2310, 2013 WL 3270995, at *18 (D.N.M. June 3, 2013) (holding Rule 17(c)'s text and the requirements in *United States v. Nixon* safeguard against potential abuses of allowing parties to file *ex parte*, and declining to impose any additional requirements to qualify for *ex parte* filing); *Tomison*, 969 F. Supp. at 595 (allowing *ex parte* filing if the party "cannot make the required [*Nixon*] showing without revealing trial strategy").

interests. (Gov't Resp. at 5–6 [ECF No. 35].)

On the record before the court, Abrams has carried his burden. The court agrees that the mere incantation of "trial strategy" is generally insufficient to justify an *ex parte* application. Though the government knows generally that Abrams has moved for subpoenas that may corroborate the alibi that he was bringing lunch to his girlfriend at or around the time of the robbery, the 17(c) application contains more than that. In other words, Abrams's justification for *ex parte* filing is more than "an unadorned, conclusory statement that the motion contains 'defense strategies' that are sensitive'" and to which the government was already privy. *Clay*, 2023 WL 3046077, at *2 (denying motion to file under seal and *ex parte*). His 17(c) application also contains specific *Nixon* disclosures that reveal his trial strategy and counsel's mental impressions. *See United States v. Sellers*, 275 F.R.D. 620, 625 (D. Nev. 2011) (granting motion to file under seal and *ex parte*). And what's more, in addition to divulging trial strategy of which the government is generally (if not specifically) aware, Abrams seeks information from *sources* of which the government *is not* aware. In the court's mind, this distinction is vital. It is not merely *what* Abrams is trying to prove that warrants an *ex parte* application, but in this case, *how* he hopes to prove it.[2]

In sum, this case fits comfortably into Judge Payne's paradigmatic example of when an *ex parte* filing should be permitted: the records to be subpoenaed "could be expected to be of use to the defense and, as to which, a satisfactory *Nixon* showing could result in the disclosure of . . . the actual defense to be advanced at trial, or other undue disclosure to the Government."

---

[2] Indeed, claiming that a subpoena would divulge "trial strategy" related to an alibi seems to be one of the weaker claims a defendant could make because the applicable rules *require* that an alibi defense be disclosed to the government. *See* Fed. R. Crim. P. 12.1.

*Beckford*, 964 F. Supp. at 1030. Because disclosure of Abrams's *ex parte* application would improperly divulge his strategy regarding an alibi defense and his counsel's mental impressions, this case warrants Abrams filing his Rule 17(c) motion under seal and *ex parte*.

## B.  Propriety of Abrams's Subpoenas

"Rule 17(c) provides a process by which federal courts can issue subpoenas duces tecum for the production of evidence before trial." *Tomison*, 969 F. Supp. at 589 (citing Fed. R. Crim. P. 17(c)). It is well-settled that the rule is not to be used as a supplemental pretrial discovery tool. *See Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1952). Indeed, "a Rule 17 subpoena duces tecum cannot substitute for the limited discovery otherwise permitted in criminal cases and the hope of obtaining favorable evidence does not justify the issuance of such a subpoena." *United States v. Caro*, 461 F. Supp. 2d 478, 481 (W.D. Va. 2006), *aff'd* 597 F.3d 608 (4th Cir. 2010). To ensure that it is not used in that manner, the movant must show the following four factors before the court may issue a pretrial 17(c) subpoena:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*Nixon*, 418 U.S. at 699–700. Distilling the four-factor test to its core, the *Nixon* court instructed that a defendant seeking a Rule 17(c) subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700; *see Caro*, 597 F.3d at 620.

"As a general rule, 'exculpatory evidence in the possession of third parties is subject to a subpoena duces tecum.'" *United States v. Bran*, No. 3:12-cr-131-01, 2013 WL 1193338, at *2

(E.D. Va. Mar. 22, 2013) (quoting *United States v. King*, 194 F.R.D. 569, 573 (E.D. Va. 2000)). Abrams has comfortably cleared the three hurdles as the requested records are highly relevant, admissible, and specific insofar as they seek exculpatory alibi evidence.[3] Abrams's subpoena request also satisfies the four-factor test propounded by the *Nixon* court: (1) the requested records are evidentiary and relevant; (2) they are in the possession of third parties and not otherwise procurable; (3) the right to assert an alibi is germane to Abrams's right to put on a defense at trial; and (4) Abrams seeks records from specific sources during a confined time-frame that directly relate to his alibi, rather than undertaking a "general fishing expedition." *See Nixon*, 418 U.S. at 699–700; *Caro*, 597 F.3d at 620. Further, there is no indication that these subpoenas are not requested in good faith; as Abrams's counsel noted, he is obligated to reasonably investigate potential alibis on his client's behalf. *See United States v. Roane*, 378 F.3d 382, 410 (4th Cir. 2004). Finding Abrams has made a proper showing that his subpoena requests are proper, the court will grant his request to issue the requested subpoenas duces tecum under Rule 17(c).

## C.     Inspection of Subpoenaed Records

The court has wide discretion in how it chooses to allow inspection of any records produced to the court as a result of a subpoena *duces tecum*. *See* Fed. R. Crim. P. 17(c)(1) ("When the items arrive, the court *may* permit the parties and their attorneys to inspect all or part of them.") (emphasis added). As the *Beckford* court noted, "there is nothing in the rule which forecloses the district court, at its discretion, from permitting only one party . . . to inspect the

---

[3] To its credit, at oral argument on Abrams's motions, the government did not contest that evidence that may corroborate an alibi easily clears the *Nixon* hurdles.

subpoenaed documents." *Beckford*, 964 F. Supp. at 1026 n.21. Indeed, permitting the government to review subpoenaed records may vitiate the utility of allowing the motion to be filed *ex parte* in the first place. *Id.* at 1029 n.27. Still, the court must be wary of prejudicing one party by not allowing them to view relevant records because "it does not follow that the defendant is entitled to strategic advantage or tactical surprise" by allowing only one side to view the subpoenaed records. *Sellers*, 275 F.R.D. at 625. At bottom, the need to balance the defendant's confidentiality and ensure a fair and efficient trial guides the court's discretion in who it permits to inspect 17(c) records. *See Tomison*, 969 F. Supp. at 597; *United States v. Mills*, No. 16-cr-20460, 2019 WL 76869, at *7 (E.D. Mich. Jan. 2, 2019).

Allowing only Abrams's counsel to inspect any documents resulting from the 17(c) subpoenas here will not give him a "strategic advantage or tactical surprise" at this stage. *Sellers*, 275 F.R.D. at 625. For one, the government will not fall victim to undue surprise. As counsel acknowledged at the hearing, Abrams is required by law to disclose any of these records if he proceeds to use them in presenting an alibi under Federal Rules of Criminal Procedure 12.1 and 16. Moreover, not allowing the government to inspect these records at this stage does not give Abrams a strategic advantage. The government itself has at its disposal myriad tools through which they may—and as discussed in oral arguments, already have—obtain the same or similar records post-indictment. *See, e.g.*, Fed. R. Crim. P. 17(c); 18 U.S.C. § 2703(b)–(c); 26 U.S.C. § 6103(i)(1); Fed. R. Crim. P. 41; *Dorward v. Ramirez*, No. 3:09-CV-0018-D, 2009 WL 2777880, at *10 (N.D. Tex. Aug. 28, 2009) ("Search warrants are routinely obtained *ex parte*, even after a person has been arrested or charged with a crime."). Although the government typically discloses evidence obtained from post-indictment *ex parte* process to defense counsel

prior to trial, it is not obligated to do so unless the records themselves are exculpatory or the government intends to utilize them at trial.

On the other hand, allowing the government to inspect the subpoenaed records could harm Abrams. As Abrams's counsel stated at the hearing, there is a real possibility that the subpoenaed records may weaken Abrams's case or subject him to other charges. In allowing the government to inspect the records as they come in, the court would impose on Abrams a difficult choice: should he request records that may help his cause, or dig his own grave by uncovering records that may undermine his proffered alibi or subject him to further criminal liability? This seems particularly relevant here, where the government has tools at its disposal, as discussed above, to obtain the same records. Rule 17(c) "empowers the court to deny an adverse party the opportunity to inspect the documents." *Tomison,* 969 F. Supp. at 591. The court will do so here.[4]

Guided by the "twin concerns" of Abrams's confidentiality and fairness to the government, the court will order that Abrams may inspect the documents upon their delivery to the court. *See id.* at 597. But once he decides which, if any, records he will use at trial, Abrams must disclose them to the government consistent with his obligations under Federal Rules of Criminal Procedure 12.1 and 16, at the same time as provided by the court's pretrial scheduling

---

[4] The court would be remiss if it also failed to note that the government obtained an indictment against Abrams despite his girlfriend's testimony regarding a possible alibi, without issuing grand-jury subpoenas to prove or disprove that purported alibi. Simply put, the government made the strategic decision that it had sufficient evidence to convict Abrams notwithstanding his potential alibi and elected to proceed with the prosecution, as is. Given that deliberate choice—and the government's ability to utilize *ex parte* process of its own post-indictment to obtain records pertaining to a possible alibi—the court finds that the government's arguments regarding tactical disadvantage and unfairness ring a bit hollow. At the end of the day, if the requested alibi records pan out for the defendant, he must disclose them to the government. But if they do not, the government is no worse off than it was when it decided to indict Abrams.

order.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 27th day of December, 2023.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE